### Diana SMITH

v.

Denecia[1] McCURDY, Individually, as Personal Representative of Thelma Nanney, Deceased, and as Executrix of The Estate of Thelma Nanney, Deceased.

No. 2007–CA–001239–MR.

Court of Appeals of Kentucky.

March 28, 2008.

Rehearing Denied May 12, 2008.

Discretionary Review Denied by Supreme Court Dec. 10, 2008.

---

1. In the Notice of Appeal Denecia's name is misspelled. The correct spelling is Denica.

William C. Adams III, Murray, KY, for appellant.

Warren K. Hopkins, Murray, KY, for appellee.

Before MOORE and WINE, Judges; BUCKINGHAM,[2] Senior Judge.

## OPINION

MOORE, Judge.

The matter before the Court involves a most unfortunate dispute between two sisters regarding the proceeds of a settlement reached in a federal lawsuit filed based on allegations of maltreatment of their deceased mother while she resided in a nursing home.[3] We pause to note that this is a controversy the Court wishes family members could resolve without court intervention, for preservation of family ties. It is regrettable when families are torn apart and seek judicial relief to settle family matters. Nonetheless, fami-

2. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and the KRS 21.580.

3. Originally, the action was filed in Marshall Circuit Court and then removed to United States District Court for the Western District of Kentucky.

lies are not compelled to settle their own legal disputes. And, their having failed to reach an agreement and having litigated this matter quite extensively, we turn to resolving this appeal. Upon a thorough review, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At the outset we are compelled to mention that while the parties agree that the basic facts in this matter are not in dispute, the record designated on appeal, and apparently even the record before the trial court, reveals little in the way of actual evidence in this matter. There are no dispositions or affidavits filed in the circuit court case. And, the discovery taken in the federal action was not made a part of the record or incorporated into the parties' briefs before the trial court. However, because the parties do not dispute the facts, we set forth the salient facts from the parties' briefs and various filings in the circuit court.

Diana Smith and Denica McCurdy are sisters. Their mother, Thelma Nanney, was a resident of Britthaven Nursing Home from July 17, 1998 until June 1, 2001. Thelma was described in the pleadings as "morbidly obese and generally unable to care for personal needs." At oral argument, counsel for Diana agreed that Thelma was elderly and did not have the capacity to earn income.

At the time of Thelma's arrival at Britthaven, she "was in poor health and not capable of working." She suffered from encephalitis and/or a stroke, rendering her virtually helpless in caring for herself.

While Thelma was at Britthaven, she developed pressure ulcers. On June 1, 2001, she was transported to Marshall County Hospital with pneumonia. She also had heart failure and chronic atrial fibrillation, cerebrovascular disease, a history of GI bleeding, anemia and peptic ulcer disease, along with effusion and a large decubitus ulcer. Within a few weeks, Thelma died, a few weeks shy of her eighty-third birthday.

After Thelma's death, Diana maintains that she did not know that her mother had a Last Will and Testament. Consequently, Diana filed a petition with the Marshall District Court seeking appointment as administratrix of her mother's estate. Diana believed that the circumstances surrounding Thelma's death indicated that a wrongful death action should be pursued on behalf of Thelma's heirs. Diana later learned that her mother left a Last Will and Testament, naming Denica as sole beneficiary. Accordingly, the probate court named Denica as executrix of Thelma's estate.

Diana, via counsel, contacted Denica's counsel, requesting information concerning the probate matter. Denica was notified, via counsel, that if she did not want to pursue a wrongful death claim on behalf of Thelma's heirs, Diana did. Denica, as personal representative of Thelma's estate, did file suit in Marshall Circuit Court against Britthaven Nursing Home, Incorporated, and twenty unknown defendants. Diana was not a party to that action, and as a potential beneficiary under a wrongful death action under typical circumstances, could not intervene.[4] In the

---

4. Under Kentucky law, an action can only be maintained by the personal representative of the decedent. *See Everley v. Wright,* 872 S.W.2d 95 (Ky.App.1993). However, Kentucky law does permit beneficiaries to bring an action under two exceptional circum-

stances: (1) when the personal representative has refused to bring the action; or (2) where there is fraud and collusion on the part of the personal representative and the person sought to be made liable for the death. *McLemore v.*

complaint, Denica stated a variety of causes of action, including negligence, willful misconduct, intentional infliction of emotional distress, constructive fraud, violations of Elder Abuse Statutes, wrongful death, survival action and *res ipsa loquitur*.

Although filed in state court, Britthaven removed the case to federal court, where a course of discovery took place,[5] including taking the deposition of Diana. Eventually, the matter was settled, via a confidential settlement agreement, which did not include Diana's participation in any matter. And, Diana has not received any proceeds from the settlement. Diana did not find out the terms of the settlement until they were disclosed when she intervened in the Marshall District Court probate action. At oral argument the parties informed the Court that the settlement released all claims in the federal court action, without delineating amounts for specific and separate causes of action set forth in the complaint.

As mentioned, Diana intervened in the Marshall District Court probate action, setting forth essentially the same argument as before this Court: the settlement in the federal action having released all claims, which Diana asserts necessarily includes the wrongful death claim having joined with the personal injury action, that pursuant to KRS[6] 411.130 Diana is entitled to a portion of the settlement. While undisclosed to this Court, the amount in controversy in the federal action settlement apparently exceeds the jurisdictional amount of the district court; accordingly, the district court did not have subject matter jurisdiction over the dispute. Conse-

quently, Diana filed suit in the Marshall Circuit Court seeking a recovery from the federal action settlement, which Denica timely answered. This is the matter presently under review.

Without taking discovery after Denica's answer was filed, Diana filed a motion for judgment on the pleadings and request for additional relief. She incorporated in this motion all the documents filed in the district court probate matter. In her motion, Diana admitted the basic facts in this action were not in dispute and that there were only questions of law in dispute. Her counsel reiterated this at oral argument before this Court.

Denica responded to Diana's motion, in a joint motion for judgment on the pleadings and summary judgment, maintaining that there were no issues of material fact. Denica requested that the circuit court take judicial notice of the entirety of the district court's probate file and the documents included therein.

Once the parties' motions were ripe for disposition, the circuit court ruled on them as cross motions. In its findings of fact, the court determined that "at the time of the death of Thelma Nanney, circumstances present indicated that wrongful death litigation should be pursued by the heirs" and that Denica filed an action for wrongful death and personal injuries leading to the death of Thelma. The court noted that a confidential settlement had been reached in the matter in federal court. In its conclusions of law, the circuit court ruled that

> [w]ith respect to the law finding that the proceeds from the Federal Court Action are not attributable to a wrongful death

---

*Sebree Coal & Mining Co.,* 121 Ky. 53, 88 S.W. 1062 (1905).

**5.** The trial court record does not include the federal court discovery.

**6.** Kentucky Revised Statute.

claim, the Court finds that the Federal Court Action is such that there is no genuine issue of material fact and that the settlement was not based upon wrongful death. As such, the provisions of KRS 411.130 do not apply, and the settlement is to be distributed through the Estate pursuant to the Last Will and Testament.

Accordingly, the circuit court found that Denica was entitled to judgment as a matter of law. However, there were also claims in Diana's complaint regarding fraud and breach of fiduciary duty, which the circuit court ruled were in dispute and allowed to survive summary judgment.

As to the wrongful death finding, Diana thereafter filed a motion to alter, amend or vacate, which was overruled by the circuit court. Once the circuit court designated the order as final and appealable with no just cause for delay, Diana timely appealed the circuit court's ruling regarding the federal wrongful death action and settlement.

## II. ANALYSIS

Diana argues that because Denica filed a wrongful death cause of action in the federal lawsuit in conjunction with a survival action for personal injuries Thelma allegedly sustained while at Britthaven,[7] all proceeds derived from the federal settlement should be distributed to Thelma's heirs in accordance with KRS 411.130(2), rather than passing through Thelma's estate. In sum, she argues that because KRS 411.133,[8] the statutory provision governing joinder of wrongful death and personal injury actions, does not include a method for distribution of proceeds from an action where both causes of action are pled, the provisions of KRS 411.130(2) control. Diana is not a beneficiary under Thelma's will. If she cannot establish that KRS 411.130(2) governs the distribution of the settlement proceeds, the proceeds will pass through the estate. She will receive nothing.

We note that the circuit court did not directly address this issue. We theorize as best we can that this is because Diana's argument was not specifically set forth in her motion before the circuit court. Rather, she incorporated by reference all matters argued in the district court probate action in her motion before the circuit court, and this issue was in fact fully argued by Diana in the district court probate action. As mentioned *supra*, the district court did not rule on the merits of the arguments regarding the settlement because it lacked subject matter jurisdiction over the settlement. Notwithstanding the fact that the circuit court did not specifically address this issue, we may affirm the circuit court for any reason sustainable on the record. *Brewick v. Brewick*, 121 S.W.3d 524, 527 (Ky.App.2003).

Regarding the circuit court's decision that the federal action and settlement were not based on a wrongful death theory, we are compelled to agree with this assessment. We noted earlier that no discovery was taken in this action before the circuit

---

7. Notwithstanding the confidential settlement in the federal court action, there is no evidence in the case at hand whether the allegations against Britthaven were actually substantiated.

8. Kentucky Revised Statute 411.133 provides as follows:

It shall be lawful for the personal representative of a decedent who was injured by reason of the tortious acts of another, and later dies from such injuries, to recover in the same action for both the wrongful death of the decedent and for the personal injuries from which the decedent suffered prior to death, including a recovery for all elements of damages in both a wrongful death action and a personal injury action.

court and the discovery taken in the federal court was not submitted in the circuit court action. Rather, within two months after Denica filed her answer, Diana filed her motion for judgment on the pleadings and request for additional relief, to which she referenced documents outside the pleadings of the circuit court matter. Accordingly, it shall be construed as a motion for summary judgment pursuant to CR [9] 56. *See Hoke v. Cullinan,* 914 S.W.2d 335, 338 (Ky.1995); CR 12.03.[10] Of course, to her credit, she maintains there were no factual disputes; rather, she contends there was only a question of law.

Notwithstanding Diana's insistence that the only controversy is the legal issue of whether KRS 411.130 controls when, pursuant to KRS 411.133, both a wrongful death action and a survival action are brought in a complaint, *i.e.,* once pled, they are forever joined for purposes of a generic settlement, we agree with the circuit court that there was an issue regarding whether the federal action was pursued and settled as a wrongful death matter. And, we find this to be a factual issue.

There being a factual issue, we look to the evidence in the record to conclude whether granting summary judgment was appropriate. Pursuant to CR 56.03 summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once a party demonstrates there are no genuine issues of material facts, the burden shifts to the opposing party to produce at least some affirmative evidence showing that there is a genuine issue of material fact. *See First Federal Savings Bank v. McCubbins,* 217 S.W.3d 201 (Ky.2006).

The only cited "evidence" is Denica's notarized Notice of Disallowance of Claim, filed in the district court probate action, incorporated by reference in the circuit court action by both parties, and specifically attached to Denica's motion for summary judgment.[11] Diana failed to file anything to rebut or contradict the Notice of Disallowance of Claim.

A cursory review of the Notice of Disallowance of Claim illustrates the relevance of Diana's failure to rebut it. In this notarized document, Denica avers, in relevant part, the following:

The Claimant [Diana] is incorrect in identifying the litigation in federal court as a "wrongful death" action.... There was no direct link between Britthaven's negligent care of Ms. Nanney and her subsequent death.

\* \* \*

Ms. McCurdy's negligence action was brought to recover for Ms. Nanney's poor treatment, pain, suffering, humiliation and feelings of abandonment.

\* \* \*

The subject of the lawsuit in Federal District Court was a survival claim mainly concentrating on the gross negligence of Britthaven in their failure to properly care for Ms. Nanney, which resulted in her pain, suffering, emotional

---

9. Kentucky Rules of Civil Procedure.

10. Pursuant to CR 12.03, "[i]f ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56."

11. The predecessor to the Kentucky Supreme Court has held that "it [is] only sensible to construe the word 'affidavits' in CR 56.03 as including any other pertinent materials which will assist the court in adjudicating the merits of the motion." *Conley v. Hall,* 395 S.W.2d 575, 583 (Ky.1965).

distress, humiliation, and feelings of abandonment. There were no proceeds allocated for wrongful death in the confidential settlement of the Federal Court lawsuit....

* * *

[The] proceeds [of the settlement] were awarded as a result of the survival claim filed by Ms. McCurdy on behalf of Ms. Nanney's Estate and therefore were disbursed in accordance with her Last Will & Testament.... *The settlement agreement reached in the Federal Court matter is subject to a confidentiality agreement, however, Ms. McCurdy does state that no portion of the proceeds were allocated for wrongful death.*

(Emphasis added).

To defeat summary judgment, Diana was compelled to present affirmative evidence to contradict these evidentiary averments by Denica to create a genuine issue of material fact.[12] *First Federal Savings Bank,* 217 S.W.3d at 203. Diana failed to do so, apparently having relied solely on her theory that the matter involved only a legal issue.

On cross motions for summary judgment, the undisputed factual averments in the Notice of Disallowance of Claim provide a foundation for ruling that the federal action was not pursued under a wrongful death theory and that it was not settled under that theory. Moreover, an alternate foundation exists for deciding that the circuit court's ruling is well founded. Denica averred also in her Notice of Disallowance of Claim that "[t]here was no destruction to Ms. Nanney's power to labor and earn money due to the fact that she had been unable to labor and earn money for years prior to her death due to her multiple health concerns, her morbid obesity and her age (82 at the time of her death)."

■ While it appears overly harsh and more than a bit cold in the case at hand, and for that matter any case dealing with the death of an individual who no longer has the capacity to earn income, under existing Kentucky law damages for a wrongful death claim are based on the destruction to the decedent's power to labor and earn money. This result is well illustrated in *Turfway Park Racing Ass'n v. Griffin,* 834 S.W.2d 667, 671 (Ky.1992) holding that, "damages flow naturally from the wrongful death of a person unless there is evidence from which the jury could reasonably believe that the decedent possessed no power to earn money." Diana does not dispute that Thelma, at the time of her death, did not have the capacity to earn money. Moreover, Diana does not argue that the recovery for wrongful death is not as stated. In the absence of such, under the present status of Kentucky law, a wrongful death claim brought under the facts of the underlying federal action would not be recoverable, *i.e.,* it would have no monetary value. Accordingly, this undisputed fact supports a finding that the settlement was not based upon a wrongful death claim.

Notwithstanding the well-settled law on recoverable damages for a wrongful death claim, counsel for Diana argued at oral argument that it is the death of a person which gives value to a survival action for personal injuries. Of course, there is no case law supporting this argument, as conceded by counsel. Nonetheless, while this theory may have credence in a matter where a decedent had power or the poten-

---

12. Diana does not complain that discovery was not permitted in the circuit court action. And, as noted *supra,* it was Diana who filed a motion for judgment on the pleadings within two motions after Denica filed her answer. Thus, Diana cannot complain that she was not given an opportunity to defeat the notarized Notice of Disallowance of Claim.

tial to earn income, it does not change the outcome in the case at hand where it is undisputed that Thelma had no capacity to earn income. Consequently, we conclude the circuit court reached the correct decision regarding the federal wrongful death claim and settlement.

Turning to Diana's theory that this matter really boils down to a legal issue, we disagree. Diana has been resolute in her argument that once causes of action for personal injury and wrongful death are both pled as permitted under KRS 411.133, in conjunction with the fact that KRS 411.133 does not include a provision regarding how proceeds for these actions would be distributed, the distribution of proceeds set forth in KRS 411.130 must control by default. She contends that had the General Assembly intended something to the contrary, it would have so stated. In other words, because KRS 411.130 contains a plan for distribution of proceeds for wrongful death claims and KRS 411.133 does not, KRS 411.130 is the fall-back provision for such distribution.

While we agree that it is the General Assembly's province to set forth the laws of this Commonwealth, Diana's argument lacks merit. We conclude that KRS 411.133 only omits the prior obligation to elect remedies and now allows wrongful death claims and survival actions to be jointly pled. Obviously, this cannot eliminate the inherent necessity for the elements of either causes of action to be met for a recovery. In our view, we never get to the exact issue presented by Diana because the facts in this matter simply do not support her novel approach. While Denica pled a cause of action for wrongful death, this is permitted under KRS 411.133. But, as is undisputed under the facts of this case, there is not a factual basis for a recovery under a wrongful death theory pursuant to existing Kentucky law. Con-

sequently, there is no merit to an argument regarding how proceeds for a non-existent recovery should be distributed. Such an argument is academic at best and not legitimately before this Court. For the reasons as stated, we affirm.

ALL CONCUR.